## JOHN C. CADIEN, PROSECUTOR, v. BOARD OF EDUCATION OF THE BOROUGH OF CLIFFSIDE PARK, DEFENDANT.

Argued November 8, 1923—Decided March 3, 1924.

**Elections—Special, to Consider Several Questions Relating to Schools—Ballots Which Failed to Provide a Free Expression Considered and Insufficiency Sustained.**

On *certiorari.*

Before Justices TRENCHARD and PARKER.

For the prosecutor, *Nicholas S. Schloeder.*

For the defendant, *Edward A. Kenney.*

PER CURIAM.

This writ of *certiorari* was taken out to review a special election relating to the purchase of land for a new school, or the condemnation of the same, the building of a new school, alterations of an old school, and for a vote upon the proposed issue of bonds to pay for one or all of these enterprises. The attack is on the election procedure and the sufficiency of the ballots under the statutes. Principally, it is said that the ballots were in the alternative, confusing and ambiguous.

Two statutes seem to be involved. One is that relating to the authority of the board to purchase or condemn land. *Comp. Stat., pp.* 4751, 4752, ¶¶ 4, 5. Respecting this legislation, it is important to note the proviso in paragraph 4 that the board of education shall have power to purchase, sell and improve school grounds, and to make, lease, enlarge, improve, repair or furnish school buildings, and to borrow money therefor with or without mortgage, provided that for any such act it shall have the previous authority of a vote of the legal voters of the district. Paragraph 5 relates to condemnation of land and contains a similar proviso that

before beginning any proceedings for taking and condemning land and other property, the board of education shall have the authority of a vote of the legal voters of the district. These powers seem to have been considered in *Fuller* v. *Board*, 78 *N. J. L.* 107, where it was held that a vote authorizing the purchase did not have the effect of authorizing acquisition by condemnation. The point to be noted at this time, however, is that the question of purchase or condemnation, or both, was one to be considered specifically by the legal voters of the district.

The other statute bearing on the matter relates to the issue of bonds. This is section 97 of the same School act as latterly amended in 1922. *Pamph. L., p.* 396. This provides that the legal voters of any school district may, either at the annual meeting or a special meeting, by majority of ballots cast, authorize the board to issue bonds for the purpose of taking and condemning land for school purposes or building a school house or school houses, &c. The act goes on to prescribe the maturity of the bonds, payment by installments, average maturity, and a number of other things which we think need not be considered at this time for reasons presently to be stated. The form and contents of the ballot are provided for generally by the act of 1921, page 161.

The special ballot distributed to voters contained three propositions; proposition one was to purchase or take and condemn for a school house lot certain described land at a cost not to exceed $19,000, and thereon to build a new school house, and furnish and equip the same at a cost of not over $172,000, or a total of $191,000. Proposition two was for the installation of a new steam plant in school number three, and certain alterations, in all not over $25,000. Apparently, this is not specifically attacked in this case. The above propositions are manifestly based on paragraphs 4 and 5 of section 86 above referred to. Proposition three relates to the bonds, and runs thus:

If proposition one is adopted and proposition two is not adopted, then there shall be one hundred and ninety-one

bonds of a thousand dollars each to mature in a specified manner.

If proposition two is adopted and proposition one is not adopted, then twenty-five bonds of a thousand dollars each, with similar specification.

If propositions one and two are both adopted, then there shall be two hundred and sixteen bonds of a thousand dollars each, with a corresponding specification of maturities.

It will be observed that proposition three was in triplicate, and the voter was required to vote "yes" or "no" to that proposition as a whole. He ·could not vote "yes" for the $191,000 and "no" to the $25,000. The whole of proposition three was tied up to such action as was taken on propositions one and two. In other words, instead of proposing the purchase of land and building of a school at $191,000 in one proposition, and leaving it to the voters then to say whether bonds should be issued for that purpose or not, and instead of proposing to the voters the installation of a steam plant for $25,000 and leaving it to them to say whether that improvement should be paid for by bonds or not, they were restricted by proposition three to the choice between paying for all of such improvements as were authorized by the issue of bonds, or of issuing no bonds at all. We are quite unable to see how a voter could express his views intelligently and, at the same time, effectively upon the questions that he was entitled to vote on by any such ballot as this, and for this reason we think the election will have to be set aside.

The other points raised merit some notice, although not essential to the decision. As to the alleged alternative contained in proposition one of buying or condemning land, we think this is justified by what was said by this court in *Fuller* v. *Chatham,* 78 *N. J. L.* (at *p.* 110). We also incline to think that the newspaper mentioned was circulating in the school district in the sense intended by the statute. As to the so-called electioneering notice that was sent out, it might be considered an unfair method of influencing an election, but we fail to see any illegality in it.

It is suggested that that prosecutor is disqualified because he voted "aye" on all the propositions, and is, therefore, estopped to challenge the result of the election. The case of *Brown* v. *Street Lighting District,* 69 *N. J. L.* 485, is invoked on this point. That case goes no further than to hold that the prosecutor, by participatin himself in the election, was estopped to attack the validity of the notice, and we are unwilling to extend the ruling beyond the limit set in that case.. We do not think that the prosecutor was required to abstain from voting as a condition precedent to his right to say that he was required to vote an invalid ballot.

For the reasons above given, the election and the results thereof will be set aside.